UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
JOSE FERREIRAS,                              :
                                             :    **ORDER DISMISSING**
                        Petitioner,          :    **PETITION FOR WRIT OF**
    -against-                                :    **HABEAS CORPUS**
                                             :
SUPERINTENDENT WILLIAM LAPE,                 :    08 Civ. 1210 (AKH)
of Coxsackie Correctional Facility,          :
                                             :
                        Respondent.          :

------------------------------------------------------------- x
ALVIN K. HELLERSTEIN, U.S.D.J.:

  Petitioner Jose Ferreiras, currently an inmate at Coxsackie Correctional Facility, brings this petition for habeas corpus pursuant to 28 U.S.C. §2254, alleging that he is being held in violation of his constitutional rights. On June 27, 2000, petitioner was convicted in the Westchester County Court (Lange, J.) of Burglary in the Second Degree (N.Y. PENAL LAW § 140.25(2) (McKinney 1998)), and Criminal Mischief in the Third Degree (N.Y. PENAL LAW § 140.25 (McKinney 1998). On August 24, 2000, he was sentenced as a persistent violent felony offender (N.Y. PENAL LAW § 70.08(1)(a) (McKinney 2008)), to an indeterminate term of 20 years to life, to run concurrently with a term of two to four years, and was directed to pay restitution of $978.00. Petitioner asserts a violation of his right to a fair trial, arguing: (1) the People altered their theory of the case in mid-trial, thus lowering their burden of proof, and (2) the People did not provide sufficient evidence to support a conviction. Petitioner also claims he was denied effective assistance of counsel in violation of his Sixth Amendment rights. The petition is denied.

**Background**

Petitioner's arrest grew out of a burglary that occurred on November 10, 1999, at 148 Daisy Farms Drive in New Rochelle, New York.

At approximately 6:20 p.m., Mr. Walter Stiller unlocked the front door of his home at 148 Daisy Farms Drive, and heard a loud noise coming from inside the house. After yelling out "who's there?" and receiving no reply, he heard footsteps running inside the house. Suspecting an intruder, Stiller went to his neighbor to call the police.

At the same time, Anthony Bouchard, one of Stiller's neighbors, observed petitioner running through the neighborhood, and slowing down to a fast walk when he approached Bouchard. He later provided a detailed description of petitioner to the police once they arrived on the scene.

Police arrived on the scene and discovered that the basement window was open and its screen had been removed. The door connecting the basement to the upstairs of the house had been broken, and a vice and metal bar had been discarded nearby. No items had been taken from the house. Police also noticed a car that was unfamiliar to Mr. Stiller parked in front of the house with the keys still in the ignition, although the engine was not running. Police determined that the car was registered to petitioner.

Officers Jackson and D'Onofrio began surveillance of the vehicle by parking their unmarked police car nearby. At about 9:45 p.m., they observed a person, matching the description of petitioner given to them by Bouchard, approach the car and attempt to open the locked door. The officers stopped petitioner, questioned him, and proceeded to search him for weapons. During the pat-down, two latex glove fell out of petitioner's sweat pants. Petitioner was then arrested and advised of his Miranda rights.

At the police station, petitioner was again read his <u>Miranda</u> rights, and subsequently admitted his involvement in the burglary.[1] Petitioner asserted that he did not take anything from the home and he did not hear anyone yell while he was in the house. When petitioner was asked why he had broken into the house, he replied "because I was confused." He urged the detective to charge him only with trespass and not another felony.

## The Indictment and Prior Proceedings

On February 1, 2000, a Grand Jury indicted petitioner on one count of Burglary in the Second Degree (N.Y. PENAL LAW § 140.25(2) (McKinney 1998)), one count of Criminal Mischief in the Third Degree (N.Y. PENAL LAW § 140.25 (McKinney 1998)), and one count of Possession of Burglar's Tools (N.Y. PENAL LAW § 140.35 (McKinney 1998)). The allegation of Burglary in the Second Degree stated as follows:[2] "The defendant . . . knowingly entered unlawfully in a dwelling with intent to commit a crime therein." The allegation of Possession of Burglar's Tools stated as follows:[3]

> The defendant . . . did possess a tool an instrument and an article adapted, designed and commonly used for committing and facilitating offenses involving forcible entry into premises and larceny by a physical taking under circumstances evincing an intent to use the same in the commission of an offense of such character.

---

[1] Petitioner orally admitted and signed the following statement: ". . . This evening I was driving to my friend's house in New Rochelle. I parked my car . . . near his home. This is on Daisy Farms Rd. in New Rochelle. My friend was not home. I checked for him and then beeped him. He lives on Daisy Farms Rd. I then drove up Daisy Farms Rd. and parked again. I left the keys in the ignition with all my money. I rang the doorbell and no one answered. I walked around the back and there was a basement window that was semi cracked. I pulled off the screen, opened the window and jumped in. I had put latex gloves on when I got out the car. I turned on the lights in the basement. The [sic] found the stairs and the door was locked. I wanted to get in so I did some damage to the door. I used a metal bar and other tools I found in the basement. I get the door open and I then opened a screen to a first floor room and climbed out. I did not take anything. There was no one home. The house had lots of stuff and was hard to walk around. It looked like a warehouse. I jumped out the window, which is on the side of the house and I ran back to my friend's house. . . I then went to Jimmy's house and I told him what I did. He did not let me in. I was confused with what I did. … I am sorry for what I did, I want to make amends to the owner."

[2] The definition of Burglary in the Second Degree is as follows: "A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein . . . and when building is a dwelling." (N.Y. PENAL LAW § 140.25(2) (McKinney 1998)).

[3] The Possession of Burglar's Tools statute states: "A person is guilty of possession of burglar's tools when he possesses any tool, instrument or other article adapted, designed or commonly used for committing or facilitating offences involving forcible entry into premises, or offenses involving larceny by a physical taking, or offenses involving theft of services. . ." (N.Y. PENAL LAW § 140.35 (McKinney 1998)).

3

On June 22, 2000, petitioner waived his right to a jury trial and requested a non-jury trial. At trial, the People presented testimony from Walter Stiller and his brother with whom he shared the home, Mathew Stiller, as well as from the arresting officers Jackson and D'Onofrio, and the lead detective, Detective Castro. Defense counsel called Donald Towsend, a friend of petitioner's parents who resided at petitioner's home, to testify that petitioner had a drug problem and was under the influence of narcotics on the day of the crime.

During the trial, the People withdrew the charge of Possession of Burglar's Tools (N.Y. PENAL LAW § 140.35).

On June 27, 2000, the Westchester County Court (Lange, J.) denied petitioner's motion for a trial order of dismissal, and found him guilty of Burglary in the Second Degree and Criminal Mischief in the Third Degree.

On August 24, 2000, petitioner was sentenced as a persistent violent felony offender[4] to an indeterminate term of 20 years to life for the Burglary count, to run concurrently with a term of two to four years for the Criminal Mischief count, and was directed to pay restitution to Stiller of $978.00 (the damage incurred in the burglary).

On July 25, 2006, petitioner's conviction was affirmed by the Appellate Division of the Supreme Court of New York, Second Department. People v. Ferreiras, 818 N.Y.S.2d 483 (N.Y. App. Div., 2d Dep't 2006). Leave to appeal this decision was denied by the New York Court of Appeals on November 7, 2006. People v. Ferreiras, 860 N.E.2d 72 (N.Y. 2006).

---

[4] "A persistent violent felony offender is a person who stands convicted of a violent felony offense as defined in subdivision one of section 70.02 or the offense of predatory sexual assault as defined in section 130.95 of this chapter or the offense of predatory sexual assault against a child as defined in section 130.96 of this chapter, after having previously been subjected to two or more predicate violent felony convictions as defined in paragraph (b) of subdivision one of section 70.04 of this article." N.Y. PENAL LAW § 70.08(1)(a) (McKinney 2008).

Petitioner now moves for a writ of habeas corpus claiming a violation of his constitutional right to a fair trial for the following reasons: 1) the trial court allowed the People to lower their burden of proof by allowing them to change their theory of the case from a specific intent of larceny to a general intent to commit a crime, and 2) the People failed to establish beyond a reasonable doubt sufficient evidence to a support a conviction. Petitioner also asserts a violation of his right to effective assistance of counsel under the Sixth and Fourteenth Amendments.

## Discussion

Persons in state custody resulting from a conviction in a state court may petition for federal habeas corpus relief on the ground that their custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). The application cannot be granted unless the petitioner has exhausted all available state court remedies, or the state court remedies are absent or ineffective. 28 U.S.C. § 2254(b)(1). The court may deny a petition on the merits regardless of whether the state remedies have been exhausted. 28 U.S.C. §2254(b)(2). The court cannot grant the writ where the state court adjudicated the claim on its merits unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable interpretation of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1)-(2). The court must also presume that the state court correctly determined factual issues unless the applicant rebuts the presumption with clear and convincing evidence. 28 U.S.C. §2254(e)(1).

    **A.**     **Petitioner Was Not Denied a Fair Trial, and the Prosecution Did Not Lower its Burden of Proof From a "Specific Intent" Standard to a "General Intent" Standard.**

Petitioner claims that he was denied his constitutional right to a fair trial when the trial court allowed the prosecution to wrongfully change its theory of the case from a theory of "specific intent" of larceny, to a "general intent" to commit any crime, thus lowering its burden of proof. This claim is based on the assertion that the prosecution switched from its original theory that petitioner broke into the house with the intention of committing larceny, to a more general theory that petitioner merely intended to commit some miscellaneous crime. Petitioner contends that since the People expressly limited their initial theory that the intent of the burglary was to commit larceny, they should have been held to that narrow theory, and could only secure a conviction if that narrow theory was proven. That the prosecution was allowed to change its theory, he claims, negated his fundamental right to be tried and convicted of only those crimes charged in the indictment, and rendered meaningless his right to have charges decided by the Grand Jury rather than the prosecutor.

Under New York law, "[a] person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." (N.Y. PENAL LAW § 140.25(2) (McKinney 1998). In order to satisfy the intent requirement of this statute, the State need not show intent to commit a particular crime; rather, a showing of a general criminal intent will suffice, i.e. a showing that the unlawful entry was for the purpose of committing any crime. DeVonish v. Keane, 19 F.3d 107, 109 (2d Cir. 1994) (citing People v. Mackey, 401 N.E.2d 398, 401 (N.Y. 1980)) ("A specific intent to commit a particular crime upon entry is not a material element of the offense under New York law. Rather the State need prove only a general criminal intent, which may be inferred from the circumstances of the break-in itself.") (internal citations and quotations omitted). However, in cases where the prosecution expressly limits itself to a more specific theory of intent, the prosecution will be confined to

6

proceeding on that narrow theory alone. Clark v. Kelly, No. 98 Cv. 6230, 2002 WL 31663512, at *7 n.6 (W.D.N.Y. 2002) (citing People v. Barnes, 406 N.E.2d 1071, 1073 n.3 (N.Y. 1980)).

Petitioner claims that the People expressly limited their theory of this case to a specific intent of larceny.[5] This contention is based on petitioner's mixing the Burglary count with the count charging Possession of Burglar's Tools. The language of the Burglar's Tools count stated that petitioner "did possess a tool an instrument and an article adapted, designed and commonly used for committing and facilitating offenses involving forcible entry into premises *and* larceny by a physical taking under circumstances evincing an intent to use the same in the commission of an offense of such character." (emphasis added). Since the indictment used the conjunctive word "*and*," as opposed to the disjunctive word used in the Possession of Burglar's Tools statute, "*or*" (N.Y. PENAL LAW § 140.35 (McKinney 1998)[6], petitioner claims the People were required to prove that he possessed the gloves with an intent to forcibly enter the premises *and* commit larceny; absent a showing of intent of larceny, petitioner claims, the People did not meet their burden of proving all the elements of the indictment.

This argument fails for two reasons: 1) any limitation of the Burglar's Tools count would not affect the discretely pleaded count of Burglary of which petitioner was ultimately convicted,

---

[5] Though petitioner alleges that the People expressly limited their theory of the case, there is no such express limitation in the record. In examining cases where courts have found an express limitation on the prosecution's theory, no support for petitioner's argument can be found. Petitioner's "seminal" case, People v. Barnes, 406 N.E.2d 1071, 1073 n.3 (N.Y. 1980), is nothing more than dictum, and does not specify how exactly the prosecution limited its theory in that case. That case merely states that when two counts are charged with specific intent, the People are required to prove specific intent in order to secure a conviction of both those charges; it does not clarify which factors would limit the scope of a theory. The few additional cases that petitioner brings to support his assertion that the instant case falls within the parameters of an express limitation are not compelling and are not sufficiently analogous to the facts at hand to find that the People limited their theory to larceny. See People v. Kolempear, 701 N.Y.S.2d 92 (N.Y. App. Div. 2nd Dep't 1999) (finding a limitation where People limited their theory in the bill of particulars and opening statement); People v. Burns, 757 N.Y.S.2d 199** (N.Y. App. Div. 4th Dep't 2003) (finding a theory was limited by the bill of particulars which limited the charge to harassment specifically via telephone and not via mail); People v. Brown, 674 N.Y.S.2d 149 (N.Y. App. Div. 3rd Dep't 1998) (limiting a burglary charge to an intent to commit sexual abuse and holding "although the . . . indictment did not specifically limit the burglary charge to a particular crime, the victim's testimony effectively limited the People's theory to one of attempted sexual abuse.").

[6] See Supra note 3.

and 2) the Burglar's Tools count did not in fact require a showing of intent to commit larceny. Aside from the Burglar's Tools count, which was eventually dropped, there were two other separate counts that did not mention any intent of larceny. Nevertheless, petitioner contends that since one of the counts mentioned a larcenous intent, the larceny element is "superimposed" on to the Burglary count; therefore, although Burglary normally only requires general intent, it now would require a higher showing of specific intent of larceny. Such a proposition is not only without any legal precedent, but also runs contrary to the notion of pleading individual discrete charges.[7] Were such a proposition to be accepted, it would negate the notion of discretely pleaded charges, for any charge would then be subject to the limitations of accompanying counts, thus effectively subjecting to the prosecution to a burden of proof beyond that which is statutorily required. See People v. Goldsmith, 515 N.Y.S.2d 321, 322 (N.Y. App. Div. 3rd Dep't 1987) (finding that a kidnapping count in an indictment does not limit the prosecution's theory of intent for the burglary count. "Such an assertion runs counter to the Legislature's apparent intention in broadly defining the specific intent required in burglary.")[8]; People v. Bess, 484 N.Y.S.2d 268, 270 (N.Y. App. Div. 3rd Dep't 1985) ("Defendant would saddle the People with a

---

[7] Petitioner bases this novel argument, that a discretely pleaded charge my be superimposed on a separate but related charge "arising out of a single and continuous factual occurrence," on dictum found in People v. Barnes, 406 N.E.2d 1071, 1073 n.3. In Barnes, where a defendant was charged with attempted burglary and attempted petit larceny, the court stated:
> "We would note that it is not necessary for the People in a burglary prosecution to demonstrate the exact crime which defendant intended to commit while unlawfully in the building. However, the prosecution in this case expressly limited its theory to one of larceny, and, having done so, this court is obliged to hold the prosecution to this narrower theory alone. *Hence, to sustain defendant's conviction of both crimes [attempted burglary and attempted petit larceny], we must find that the People proved beyond a reasonable doubt that defendant was present in the store with the intent to appropriate property.*"

(internal citations omitted) (emphasis added). There is no basis to find, as petitioner claims, that the intent requirement for the attempted petit larceny count was transferred to the attempted burglary count. There is no mention that the element required for one count would have any effect on a separately pleaded count.

[8] Petitioner asserts that Goldsmith's holding was specifically based on the fact that the defendant intended to commit two separate crimes, kidnapping and burglary, and it is only for this reason that the two charges were not interrelated and the burglary charge was thus not limited to the intent of kidnapping. I find no such limitation of Goldsmith's holding.

burden more onerous than the law exacts" if they had to prove a larcenous intent for burglary.); cf. People v. Vasquez, 589 N.Y.S.2d 13, 14 (N.Y. App. Div. 1st Dep't 1992); ("[C]rimes themselves have different elements, so that defendants acquittal of burglary in the third degree and grand larceny in the third degree did not necessarily negate any of the elements of possession of burglar's tools."). Therefore, even if the Burglar's Tool count would have been limited a specific intent of larceny, it would not affect the other discretely pleaded count of Burglary.

Indeed, the language of the Burglar's Tools count did not limit the prosecution to the theory of specific intent of larceny even within the count itself, despite the fact that the indictment used the conjunctive "and" as opposed to the disjunctive "or". It is well established that the use of the conjunctive "and" in an indictment of an offense, which may be violated by committing any one of several elements, will not obligate the prosecution to prove additional elements of that offense. United States v. Schiff, 801 F.2d 108, 114 (2d Cir. 1986) (citing United States v. Cioffi, 487 F.2d 492, 499 (2d Cir. 1973)) ("It appears settled that indictments worded in the conjunctive, charging violations of statutes worded in the disjunctive, can be supported by proof of either of the conjoined means of violating the act."); see also Clark, 2002 WL 31663512, at *8 ("[I]t is well established in the Second Circuit that a jury may convict on finding any elements of a disjunctively defined offense, despite the use of conjunctive language in the indictment").[9] Therefore the People did not confine themselves to prove the specific intent of larceny based on the language of the indictment, thus a showing of general intent was sufficient.

Finally, petitioner contends that the People limited their theory to specific intent because during summation of the trial, the prosecutor stated that the reason that petitioner entered the

---

[9] See also, People v. Charles, 426 N.E.2d 118, 121 (N.Y. 1984) (quoting People v. Nicholas, 312 N.Y.S.2d 645, 648 (N.Y. App. Div. 3rd Dep't 1970)) ("When an offense may be committed by doing any one of several things, the indictment may, in a single count, group them together and charge the defendant with having committed them all, and a conviction may be had on proof of the commission of any one of the things, without proof of the commission of the others.").

house was to steal something.  However, statements by the prosecutor during summation do not restrict the theory of a case, and petitioner acknowledges such.  See Bess, 484 N.Y.S.2d at 270. Nevertheless, petitioner argues, that in the overall context of the circumstances of this case, the summation statements should reflect a limitation of the People's theory.  This argument fails.  It was not an unreasonable application of law for the court to have found that this factor did not restrict the People to proving a larcenous intent.  See 28 U.S.C. §2254(d).

In sum, petitioner's assertion that the People limited their theory to specific intent is without merit.  The People were not obligated to prove a specific intent of larceny.  Ferreiras, 818 N.Y.S.2d at 483.  Since the People did not expressly limit their theory to specific intent, they were only obliged to prove general criminal intent in order to secure a Burglary conviction. Therefore, the People did not alter their theory or lower their burden of proof, as their theory remained one of general intent throughout the trial.  Under 28 U.S.C. §2254(d)(1), petitioner's habeas writ must be denied since he has not shown that the state court's decision was not an unreasonable application of state law, let alone clearly established federal law, as required by the statute.

Accordingly, habeas relief on the ground that petitioner did not receive a fair trial because the People lowered their burden of proof from a specific intent to a general intent is denied.

### B. Petitioner's Insufficient Evidence Claim

Petitioner claims that he was denied a fair trial because the People failed to present sufficient evidence to support a conviction beyond a reasonable doubt.  Since petitioner supports this claim by arguing again that the People were required to prove burglary with the specific

intent of larceny, this claim is without merit. As the determination above makes clear, the People were not required to prove specific intent.

Accordingly, this claim is denied.

**C.     Petitioner's Ineffective Assistance of Counsel Claim**

Petitioner claims that he was denied effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights. He bases this claim on the allegation that his trial counsel: 1) mistakenly believed that a Burglary count required a showing of specific intent, contrary to well established New York law, which only requires general intent; 2) failed to recognize that the People had limited themselves to proving specific intent, thereby missing the opportunity to assert an independent reason for applying the specific intent standard, and 3) failed to object to the People's withdrawal of the Burglar's Tools count after the presentation of the case-in chief, and failed to advise the court that that was supposedly a concession of the absence of specific intent, which effectively allowed the prosecution to lower its burden of proof.

In order to prevail on a claim of ineffective assistance of counsel, the claimant must establish two components: 1) the counsel's performance was deficient and "fell below an objective standard of reasonableness," and 2) the claimant was prejudiced by the deficient performance, with a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688 (1984).

Turning to Strickland's second prong first, petitioner fails to show that any of the alleged errors prejudiced his ultimate verdict. Even if counsel would have raised petitioner's current arguments, and only asserted a standard of specific intent based on the claim that the prosecution affirmatively limited itself to this narrow theory, the argument would have been rejected. There

is no basis to presume that the trial court would have accepted this erroneous argument and decided the case differently; petitioner would still have been convicted based on the correctly applied general intent standard. Because petitioner fails Strickland's second prong, there is no need to decide whether counsel's performance was in fact deficient. See Strickland, 466 U.S. at 697. ("[I]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.").

Accordingly, habeas relief on the claim of ineffective assistance of counsel is denied.

## Conclusion

For the afore mentioned reasons, I deny petitioner's writ of habeas corpus. Further, I deny a certificate of appealability, for there has not been a substantial showing of the denial of a constitutional right. Lozada v. United States, 107 F.3d 1011, 1016-17 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d. Cir.1997).

The Clerk shall mark the case closed.

SO ORDERED

Dated: New York, New York
July __, 2008

ALVIN K. HELLERSTEIN
United States District Judge